IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| VERNON MONTGOMERY, | ) |
| | ) |
|     Petitioner, | ) |
| | ) |
|     v. | )   C.A. No. 22-1023(MN) |
| | ) |
| BRIAN EMIG, Warden, and ATTORNEY | ) |
| GENERAL OF THE STATE | ) |
| OF DELAWARE, | ) |
| | ) |
|     Respondents.[1] | ) |

### MEMORANDUM OPINION

Vernon Montgomery – *Pro se* Petitioner.

Andrew J. Vella, Deputy Attorney General, Delaware Department of Justice, Wilmington, DE – Attorney for Respondents.

January 8, 2025
Wilmington, Delaware

---

[1]     The Court has substituted Warden Brian Emig for former Warden Robert May, an original party to the case. *See* Fed. R. Civ. P. 25(d).

**NOREIKA, U.S. DISTRICT JUDGE**

Pending before the Court is a Petition and an Amended Petition for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (herein collectively referred to as "Petition") filed by Petitioner Vernon Montgomery ("Petitioner"). (D.I. 1; D.I. 12). The State filed an Answer in opposition, to which Petitioner filed a Reply. (D.I. 18; D.I. 22). For the reasons discussed, the Court will deny the Petition.

## I. BACKGROUND

> At approximately 3:20 pm on October 2, 2017, a black male—later identified as [Petitioner]—walked into a WSFS Bank located on Union Street in Wilmington. [Petitioner] carried a black backpack and wore glasses, a ski mask, dark pants, a dark hoodie, and a neon construction vest. [Petitioner] approached WSFS employee Jonathan Dalacki and ordered him to hand over the contents of his cash drawer. Dalacki gave [Petitioner] the cash from his drawer, which included a money pack with a Global Positioning System (GPS) tracking device hidden inside. [Petitioner] grabbed additional cash, including a second money pack containing a GPS tracking device, from another bank employee's cash drawer. [Petitioner] then left the building and fled in the direction of West Third Street. A bank employee called 911 and reported the robbery.
>
> Almost immediately, the Wilmington Police Department began receiving location information from the GPS tracking devices. Through the Wilmington communications center ("WILCOM"), police dispatch was then able to relay that location information, along with information dispatch received from the 911 call, in real time to police officers on patrol. Via these transmissions, the following information was relayed: (i) the trackers were headed eastbound on West Fourth Street; (ii) the trackers were travelling at a speed that suggested they were in a vehicle; (iii) the trackers were then stationary on the 1000 block of West Fourth Street; (iii) the suspect was a tall black man wearing glasses and a neon-colored construction jacket with hood; and (iv) the suspect had a gun.
>
> The police quickly cordoned off the 1000 block of West Fourth Street, stopping traffic. Corporal Johnny Whitehead, Officer Kecia Rosada, and other responding Wilmington police officers began canvassing the area on foot. Corporal Whitehead approached a Chrysler 200 automobile from the rear and observed [Petitioner],

> with his hands on the wheel, staring straight ahead. [Petitioner's] failure to acknowledge the police presence struck Corporal Whitehead as peculiar because the occupants of the other stopped vehicles appeared visibly surprised by the roadblock. Corporal Whitehead then reversed course and approached the car's driver's side window. [Petitioner] continued to stare straight ahead with his hands on the steering wheel, ignoring Corporal Whitehead's presence. Standing at [Petitioner's] window, Corporal Whitehead noted that [Petitioner's] appearance matched the general description of the suspect as a tall black male. Corporal Whitehead also observed latex gloves located in a cup in the vehicle's center console.
>
> Contemporaneously, Officer Rosada approached [Petitioner's] vehicle from the front. From her vantage point, she could see a neon article of clothing in [Petitioner's] lap. She gestured to Corporal Whitehead in its direction. After Corporal Whitehead saw the neon vest, he ordered [Petitioner] out of the car at gunpoint and placed him in restraints. Corporal Whitehead then opened a bag that was on the front passenger side floorboard and found a large quantity of cash and a handgun.
>
> The police impounded the vehicle and obtained a search warrant for it. The search yielded a black hooded sweatshirt, a traffic-safety vest, a ski mask, a cup containing blue plastic gloves, and two backpacks. Inside one of the backpacks, the police located a loaded 9-millimeter handgun, work gloves, two GPS units, and $7,385.00 in cash.

*Montgomery v. State*, 227 A.3d 1062 (Table), 2020 WL 1672845, at *1-2 (Del. 2020).

In 2017, a New Castle County grand jury indicted Petitioner for first degree robbery, possession of a firearm during the commission of a felony ("PFDCF"), wearing a disguise during the commission of a felony, and two counts of possession of a firearm by a person prohibited ("PFBPP"). (D.I. 19-1 at Entry No. 33). On February 7, 2018, Petitioner's appointed counsel filed a motion to suppress the evidence seized from Petitioner's car. (D.I. 19-1 at Entry No. 12; D.I. 19-10 at 38-41). Petitioner filed a request to proceed *pro se* on February 12, 2018, which the Superior Court granted on June 21, 2018. (D.I. 19-1 at Entry Nos. 14, 30). Petitioner filed an addendum to the motion to suppress evidence, arguing that his initial detention was also illegal, as well as a

3

motion to suppress his post-*Miranda* statement. (D.I. 19-1 at Entry No. 32; *see* D.I. 19-11 at 37-41). On August 10, 2018, the Superior Court denied Petitioner's motion to suppress the evidence. (D.I. 19-1 at Entry No. 64; D.I. 19-11 at 37-41). On January 18, 2019, Petitioner filed a motion to sever the PFBPP counts, which the Superior Court granted. (D.I. 19-1 at Entry Nos. 125, 133).

On February 2019, a Superior Court jury found Petitioner guilty of first degree robbery, PFDCF, and wearing a disguise during the commission of a felony. (D.I. 19-1 at Entry No. 142). In a separate bench trial, the Superior Court found Petitioner guilty of the severed PFBPP charges. (D.I. 19-2 at Entry No. 6). On May 24, 2019, the Superior Court sentenced Petitioner to an aggregate of 20 years of incarceration followed by decreasing levels of probation. (D.I. 19-13 at 67-72). The Delaware Supreme Court affirmed Petitioner's convictions. *See Montgomery,* 2020 WL 1672845.

In March 2021, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). (D.I. 19-1 at Entry No. 181). The Superior Court denied the Rule 61 motion, and the Delaware Supreme Court affirmed that decision on July 25, 2022. *See State v. Montgomery*, 2021 WL 4497405 (Del. Super. Ct. Oct. 1, 2021); *Montgomery v. State*, 282 A.3d 554 (Table), 2022 WL 2942088 (Del. July 25, 2022).

## II. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for

4

analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *See Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

5

A petitioner's failure to exhaust state remedies will be excused, and the claims treated as "technically exhausted", if state procedural rules preclude him from seeking further relief in state courts. *See Coleman v. Thompson*, 501 U.S. 722, 732, 750-51 (1991) (such claims "meet[] the technical requirements for exhaustion" because state remedies are no longer available); *see also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006). Although treated as technically exhausted, such claims are procedurally defaulted for federal habeas purposes. *See Coleman*, 501 U.S. at 749 (1991); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989). Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show that the errors during his trial created more than a possibility of prejudice; he must show that the errors worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," *Murray*, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental

miscarriage of justice. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Wenger v. Frank*, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998); *Murray*, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004); *see also Reeves v. Fayette SCI*, 897 F.3d 154, 157 (3d Cir. 2018).

### C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[2] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the state court proceeding. 28 U.S.C. § 2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). The deferential standard of § 2254(d) applies even when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied. *See Harrington v. Richter*, 562 U.S. 86, 98-101 (2011). As explained by the Supreme

---

[2] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. The mere failure to cite Supreme Court precedent does not require a finding that the decision is contrary to clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002). For instance, a decision may comport with clearly established federal law even if the decision does not demonstrate an awareness of relevant Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*. In turn, an "unreasonable application" of clearly established federal law occurs when a state court "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of a prisoner's case." *Williams*, 529 U.S. at 413; *see also White v. Woodall*, 572 U.S. 415, 426 (2014).

When performing an inquiry under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). State court factual determinations are not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

8

## III.   DISCUSSION

Petitioner's timely filed Petition asserts the following Claims for relief: (1) his arrest was illegal (D.I. 1 at 5; D.I. 5 at 6); (2) the State waived any arguments on direct appeal that were not advanced at Petitioner's suppression hearing (D.I. 1 at 7; D.I. 12 at 9); (3) an entire colloquy between the Superior Court judge and the State was omitted from the suppression hearing transcripts and the Superior Court denied Petitioner's request for a copy of the audio recording of the proceeding (D.I. 1 at 8; D.I. 12 at 10); and (4) two of the testifying police officers, Cpl. Rosado and Detective Wicks, committed perjury (D.I. 1 at 10; D.I. 12 at 12).

### A.   Claims One and Two:  Fourth Amendment Violations

In Claim One, Petitioner contends that the Superior Court violated his Fourth Amendment rights and his Delaware constitutional rights by failing to suppress the evidence seized from his car.  He argues that the police did not have probable cause until they searched his closed bag, which occurred after he was arrested.  (D.I. 12 at 7).  In Claim Two, Petitioner contends that: (1) the State "waived" its argument that the neon vest created probable cause by failing to raise it during his suppression hearing; and (2) the Delaware Supreme would have concluded that his Fourth Amendment rights and his Delaware constitutional rights were violated if it had not considered the State's "waived" argument.  (D.I. 12 at 9).

Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976), a federal habeas court cannot review a Fourth Amendment claim if the petitioner had a full and fair opportunity to litigate the claim in the state courts.  *Id.*; *see also Wright v. West*, 505 U.S. 277, 293 (1992).  A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism.  *See U.S. ex rel. Hickey v. Jeffes,* 571 F.2d 762, 766 (3d Cir. 1980); *Boyd v. Mintz,* 631 F.2d 247, 250 (3d Cir. 1980).  Conversely,

9

a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore, avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing that Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Significantly, "an erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id*.

In this case, Petitioner filed an amended motion to suppress the evidence pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure during the pre-trial stages of his trial. The Superior Court denied that motion after conducting a hearing. Petitioner then challenged the Superior Court's denial in his direct appeal to the Delaware Supreme Court, presenting the same arguments he raises in Claims One and Two. (D.I. 19-9). The Delaware Supreme Court affirmed the Superior Court's judgment after explicitly rejecting Petitioner's illegal arrest argument and implicitly rejecting his waiver argument by ignoring it. *See Montgomery*, 2020 WL 1672845, at *3-4.

This record clearly demonstrates that Petitioner was afforded a full and fair opportunity to litigate his Fourth Amendment Claims in the Delaware state courts. The fact that Petitioner disagrees with these decisions and/or the reasoning utilized therein is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Petitioner's Fourth Amendment arguments in Claims One and Two as barred by *Stone*.

      **B.**     **Claim Three: Failure to Provide Audio Copies of Suppression Hearing**

During the pre-trial stage, Petitioner filed a motion in the Superior Court asking for an "audio recording of suppression hearing due to words missing or changed." (D.I. 19-1 at Entry No. 124). In January 2019, the Superior Court denied the motion for lack of cause after considering the August 10, 2018 suppression hearing transcript as well as the entire record of Petitioner's criminal proceeding, and after performing an in-camera review of "the FTR gold audio

recording." (D.I. 19-25 at 39-44). The Superior Court found that "the Audio and the Transcript are virtually identical" . . . [and] "that [the] Transcript is accurate." (D.I. 19-25 at 41).

Petitioner was convicted. After filing his notice of appeal in the Delaware Supreme Court, Petitioner filed a petition for writ of mandamus pursuant to Delaware Supreme Court Rule 43, asking the Delaware Supreme Court to

> direct the Superior Court to transmit to the Court two audio recordings as part of the record in his direct appeal: (i) the recording of the August 10, 2018 suppression hearing and (ii) the recording of the Superior Court's questioning of the jurors in connection with the allegation of juror misconduct.

*Matter of Montgomery*, 226 A.3d 742 (Table), 2020 WL 1062087, at *1 (Del. Mar. 4, 2020). The Delaware Supreme Court denied the mandamus petition, opining:

> A writ of mandamus is not warranted under the circumstances here. [Petitioner] cannot establish that the Superior Court had a duty to provide this Court with audio recordings of the proceedings. The record on appeal consists of the original papers, including photographs, documentary exhibits, and the prepared transcript. Moreover, [Petitioner] cannot show that the Superior Court arbitrarily failed or refused to perform its duty. In a separate motion filed with the Superior Court prior to trial, [Petitioner] sought permission to review the recording of the suppression hearing himself. The Superior Court correctly noted that the authority to review transcripts for errors lies with the Superior Court itself. After the trial judge listened to the audio recording of the suppression hearing, he concluded that the transcript and the audio recording were essentially identical, with only "insignificant, nonsubstantive and irrelevant [discrepancies], mostly relating to pauses and [the like] made by the [Superior] Court during its ruling."

*Id*. at *1.

The Delaware Supreme Court affirmed Petitioner's convictions in April 2020. In July and October 2020, Petitioner moved for a new trial based on newly discovered evidence. (D.I. 19-1 at Entry Nos. 171, 173). He contended that the suppression hearing transcript was missing a colloquy between the Superior Court and the State regarding when the vest was seen. (D.I. 19-25 at 37).

The Superior Court denied the motion because: (1) Petitioner was "not using new evidence that was discovered after trial that could not have been discovered before now through the exercise of due diligence"; and (2) Petitioner "uses old evidence available to him prior to trial to support a new argument." (*Id.*).

In his Rule 61 motion, Petitioner raised the issue that the suppression hearing transcript was the missing aforementioned colloquy and argued that the state courts' failure to provide the requested audio recording of the suppression hearing violated his due process rights. (D.I. 19-33 at 29). The Superior Court denied the argument as barred by Delaware Superior Court Rule 61(i)(3) due to Petitioner's failure to raise the issue on direct appeal, and also as barred as previously adjudicated under Rule 61(i)(4*). See Montgomery*, 2021 WL 4497405, at *6. The Delaware Supreme Court affirmed that decision. *See Montgomery*, 2022 WL 2942088, at *1.

In Claim Three, Petitioner alleges that the audio recordings of the suppression hearing contain a colloquy that occurred between the State and the Superior Court that is missing from the written transcripts of the suppression hearing. He contends that the Superior Court violated his rights under the Fourteenth Amendment by denying his request for copies of audio recordings of the suppression hearing.

As an initial matter, the Court notes that Petitioner presented his argument concerning the alleged discrepancy between the suppression hearing transcript and the suppression hearing audio recordings as a matter of Delaware state law – and not as a matter of federal constitutional law – when he raised the issue in his pre-trial motion, in his mandamus petition, and in his motion for new trial. Petitioner did not raise the issue of the discrepancy between the suppression hearing transcript and audio-recording on direct appeal – not as a state law issue or as a federal constitutional issue. To the extent Petitioner raised the discrepancy between the suppression

hearing transcript and suppression hearing audio recording as a federal due process issue in his Rule 61 motion, the Superior Court's application of Rule 61(i)(3) constituted a "plain statement" under *Harris v. Reed* that its decision rested on state law grounds. This Court has consistently held that Rule 61 is an independent and adequate state procedural rule precluding federal habeas review. *See McCleaf v. Carroll*, 416 F. Supp. 2d 283, 296 (D. Del. 2006); *Mayfield v. Carroll*, 2005 WL 2654283 (D. Del. Oct. 11, 2005). Thus, the Court cannot review the merits of Claim Three absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner has not alleged any cause for his failure to raise Claim Three on direct appeal. In the absence of cause, the Court will not address the issue of prejudice. Petitioner also has not satisfied the miscarriage of justice exception to the procedural default doctrine, because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Three as procedurally barred from federal habeas review.

    C.    **<u>Claim Four: Perjury</u>**

In his final Claim, Petitioner contends that two police officers who testified during his trial committed perjury. More specifically, he alleges that Corporal Rosado and Detective Wick's testimony was "in clear conflict" with Detective Bell's testimony. The record reveals that Petitioner did not raise this issue to the Delaware Supreme Court on direct appeal. He did, however, raise it in his Rule 61 motion, but the Superior Court denied Claim Four as procedurally barred by Rule 61(i)(3) due to his failure to raise it on direct appeal. *See Montgomery*, 2021 WL 4497405, at *6. The Delaware Supreme Court affirmed that decision for the same reasons given by the Superior Court. *See Montgomery v. State*, 248 A.3d 105 (Table), 2021 WL 754849, at *1 (Del. Feb. 23, 2021).

By applying Rule 61(i)(3), the Superior Court articulated a plain statement that it was enforcing Petitioner's default on state law grounds. Consequently, Claim Four is procedurally defaulted, which means that the Court cannot review its merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claim is not reviewed.

Petitioner has not alleged any cause for his failure to raise Claim Four on direct appeal. In the absence of cause, the Court will not address the issue of prejudice. Petitioner also has not satisfied the miscarriage of justice exception to the procedural default doctrine, because he has not provided new reliable evidence of his actual innocence. Accordingly, the Court will deny Claim Four as procedurally barred from federal habeas review.

### D.   **Pending Motions**

During the pendency of this proceeding, Petitioner filed a Motion for Reconsideration of the Court's denial of his Motion to Expedite a Ruling (D.I. 49), a Motion for Summary for Judgment (D.I. 51) and a Motion to Include New Case Ruled in 2024 (D.I. 54). The Court has concluded that the instant Petition does not warrant habeas relief. Therefore, the Court will deny the pending motions as moot.

## IV.   **CERTIFICATE OF APPEALABILITY**

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition, when a district court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the

court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *See Slack,* 529 U.S. at 484.

The Court has concluded that the instant Petition does not warrant relief. Reasonable jurists would not find this conclusion to be debatable. Accordingly, the Court will not issue a certificate of appealability in this case.

## V. CONCLUSION

For the reasons discussed, the Court will deny the instant Petition without issuing a certificate of appealability or holding an evidentiary hearing. The Court will enter an Order consistent with this consistent with this Memorandum Opinion.